EX PARTE DICK TWEDELL

No. A-6536. Decided January 29, 1958.
Rehearing overruled February 26, 1958.
(309 S.W. 2d Series 834)

*Mullinax, Wells & Morris* and *Charles J. Morris,* of Dallas for Relator.

*Emil Corenbleth,* of Dallas, for respondents.

MR. JUSTICE SMITH delivered the opinion of the Court.

This is an original habeas corpus proceeding filed on behalf of Dick Twedell from a commitment order on a judgment of contempt issued by the Judge of the 44th Judicial District Court of Dallas County, Texas, for violation of a temporary injunction in a civil suit styled Minyards No. 2, Inc. v. Amalgamated Meat Cutters and Butcher Workmen of North America, Local No. 540, AFL-CIO et al., in which Minyard's No. 1, Inc. and Minyard's No. 3, Inc. to No. 7, inclusive intervened. All of these stores shall hereinafter be referred to as "Minyard Stores" or "The Stores."

The judgment of contempt held relator in violation of the district court's order of temporary injunction, issued in the same cause on July 31, 1957, in which relator and other named defendants, including Amalgamated Meat Cutters and Butcher Workers of North America, Local No. 540, AFL-CIO (hereinafter referred to as Union) were:

"* * * enjoined and restrained from picketing or carrying any signs of any character at or near the places of near the places of business of the plaintiff and intervenors, as follows, to wit:

"Minyard's #2, Inc., 4900 Lindsley, Dallas, Texas,
"Minyard's #1, Inc., 6015 Lindsley, Dallas, Texas,
"Minyard's #3, Inc., 205 W. Irving Blvd., Irving, Texas,
"Minyard's #4, Inc., 4325 Lovers Lane, Dallas, Texas,

"Minyard's #5, Inc., 3726 Northwest Highway, Dallas, Texas, "Minyard's #6, Inc., 9937 Garland Road, Dallas, Texas, "Minyard's #7, Inc., 125 E. Main Street, Mesquite, Texas, from publishing, orally or in writing, any statement concerning their representation of any employees of the plaintiff and intervenors, the plaintiff and intervenors' refusal to bargain with them, and any statement with reference to the plaintiff and intervenors being unfair," and further enjoined them from in any way "urging, compelling, forcing, or coercing the plaintiff and intervenors to recognize or bargain with them, or from urging, compelling, forcing or coercing any employee of the plaintiff and intervenors to join or solicit them as their representative; and from in any way attempting to or inducing the public not to purchase merchandise from the plaintiff and intervenors; and, from interfering with the plaintiff and intervenors in the ownership, use, and enjoyment of their property, and their right to engage in a lawful business. * * * "

On June 19, 1957 relator, in his capacity as President of the Union, wrote A. W. Minyard, President of each of the eight Minyard grocery stores in the Dallas area, advising that the Union intended to establish a picket line in front of his place of business, and that the purpose of this picket line was to call the attention of union members and supporters of organized labor that Minyard "meat department employees are not members of Local No. 540."[1] The letter expressed the hope that such a demonstration of support would persuade the meat department employees to join the union. Relator testified that such was the only purpose of the picketing which followed.

---

1.—                                    "June 19, 1957
"Mr. A. W. Minyard
"716 Mr. Auburn
"Dallas, Texas
"Dear Sir
"This is to advise you that on June 21, 1957, Local #540, AMCBW of NA will establish a picket line in front of your place of business. The purpose of this picket line is to call to the attention of union members and supporters of organized labor that your meat department employees are not members of Local #540.
"We hope that the demonstration of support of Local #540 in its efforts to organize meat department employees, which this picket line will produce, will persuade your employees to become members of our local union. In doing so they will join the hundreds and thousands of other meat department employees in this country who are members of local unions affiliated with the Amalgamated Meat Cutters and Butcher Workers of North America.
"There is one matter which we would like to emphasize: We are not making any demand at this time upon your company or its management to agree to or execute any contract with our union covering any of your employees. Under the National Labor Relations Act, your company is permitted to recognize and bargain with our local union only after a majority of your meat department employees have

Relator and other agents of the union began picketing of various Minyard stores, including the store of Minyard's No. 2, Inc., plaintiff below, on June 21, 1957, with a placard reading as follows:

"Meat department Employees of Minyard Stores on this location are not members of Local 540, AMC and BW NA, AFL-CIO."

On that same day, Minyard's No. 2, Inc., joined by six other Minyard stores (each separately incorporated), as intervenors, sought and obtained a temporary restraining order from the district court.

The Stores filed their petition alleging that through such picketing pressure was being brought to bear upon each store to force their employees to join the union in violation of the public policy of the state, the Right to Work Laws, and the other labor laws of the State of Texas, and the antitrust laws of the State of Texas.

. The Stores further alleged that as the result of such acts and conduct their stores suffered a loss of business. It was stipulated that Mr. Minyard would testify that the picketing caused a decrease in business. Respondents alleged that no labor dispute existed between the stores and their employees, and that the union represented none of their employees.

---

authorized the union to represent them. Therefore, even if your company should now or hereafter offer to recognize our union or enter into collective bargaining with us covering your meat department employees, our union would refuse such an offer and we would continue to refuse until your employees had lawfully authorized us to represent them.

"Should your employees desire to join our union, they may apply for membership at the Local #540 office, 8658 Garland Road, Dallas, Texas, or ask the picket for a membership application card which they can fill out and return to him. When we have received applications from a majority of your employees, we will contact you further.

"You should also understand that it is your right under the Constitution of the United States and the National Labor Relations Act to advise your employees of the economic detriment which you and they will sustain as a result of the withholding of patronage from them by union members and sympathizers as long as they remain non-members of the union.

"You may, in the exercise of your lawful rights, urge your employees to join the union and thereby acquire for themselves and for your store, the good will of organized labor. We feel sure that if your employees, who have been taught to look to you for leadership on matters affecting their employment, are convinced that it is your desire that they join the union, they will realize that acquisition of union membership at the earliest opportunity is in their best interests.

Sincerely yours,

SR,  
oeiu #45"

Dick Twedell  
President — Local #540

The Stores pleaded that the picketing and the acts and conduct of the defendants were in violation of the civil and criminal statutes of the State of Texas, including Article 5154g, Article 5154d, and Article 5154f, Vernon's Annotated Civil Statutes of Texas, and Articles 1632, 1634, and 1635 of the Penal Code of the State of Texas. They further specifically alleged that the acts of picketing were unlawful, in that the Texas statutes provides that the right of persons to work shall not be denied or abridged on account of their nonmembership in any labor union or labor organization, and that in the exercise of such right, all employees shall be free from threats, force, intimidation, or coercion; that the defendants have violated such rights and the public policy of this state by picketing with the object of urging, compelling, forcing, or coercing the plaintiff to recognize or bargain with the defendants, and urging, compelling, forcing or coercing the employees of the plaintiff to join the union or select it as their representative.

On June 24, 1957, the defendants, in the original suit, including relator, filed their motion to dismiss the cause and motion to dissolve the temporary restraining order, assigning various reasons, among them being that the defendants, through their acts, were engaged in a lawful expression of free speech and that the publications were truthful statements relating to their efforts to organize the meat department employees of plaintiff's stores and the fact that said employees were not members of Local No. 540; that all of the publications were privileged and guaranteed under the Constitution of the United States and the Constitution of the State of Texas; that the public had the right to know whether or not plaintiff's employees were union members, and that the picket sign clearly set out the lawful purpose of such picketing.

The motion to dismiss the cause contains the contention that the state court lacked jurisdiction of the parties and the subject matter for the reason that the cause of action, if any, alleged by plaintiff, has been pre-empted by the Congress of the United States and jurisdiction lies exclusively in the National Labor Relations Board and the remedy is available under the Labor Management Relations Act of 1947, as amended (Taft-Hartley Act).

The trial court, after a hearing on the petition for temporary injunction, as well as the motion to dismiss the cause, and to dissolve the temporary restraining order, overruled the motion to dismiss and to dissolve, and granted the temporary injunction

as above indicated. No appeal was taken from such action, although notice of appeal was given.

The record shows that after entry of the temporary injunction, and notwithstanding such injunction, relator and the union resumed picketing of various Minyard stores and caused to be published as a newspaper advertisement and also circulated a pamphlet, the following printed matter:

"NOTICE                               TO THE PUBLIC

"The Meat Department Employees of the
MINYARD FOOD STORES
Are NON-UNION

"Local No. 540, Amalgamated Meat Cutters and Butcher Workmen of North America, AFL-CIO, is currently engaged in a campaign to organize the Minyard meat department employees, to provide them with the same high standards of wages, hours and working conditions now prevailing in union meat markets and departments throughout Dallas, where the A.M.C. and B.W. of N.A. Union Label is displayed.

"Please support the Effort to Unionize the MINYARD MEAT DEPARTMENTS.                     BUY UNION
and Demonstrate That Union Members, Their
Families and Friends, Patronize Only

UNION BUTCHER SHOPS DISPLAYING
THIS LABEL

(Facsimile of Union label bearing in large print
UNION MARKET and also considerable smaller printing)

"The MINYARD STORES DO NOT DISPLAY This Label. *They* are NON-UNION."

The district court found that relator and the union had violated its temporary injunction for the reason that they "have committed acts of picketing, have delivered and circularized pamphlets and circulars, and have caused to be published a newspaper advertisement * * *," and therefore adjudged them in contempt.

The questions presented by relator's petition for habeas corpus are: (1) whether the district court had jurisdiction to en-

join the acts of picketing and publication, or (2) whether the regulation of such conduct lies exclusively within the jurisdiction of federal tribunals pursuant to the Labor Management Relations Act of 1947 (Taft-Hartley Act), 29 U.S.C., Sections 141-168, jurisdiction of the parties and subject matter having been pre-empted by said federal statute; and (3) whether the acts of picketing, distributing handbills and publishing newspaper advertisements, for which relator was held in contempt, were privileged acts of free speech and free press protected by Article I, Section 8 of the Constitution of the State of Texas and by the First and Fourteenth Amendments of the Constitution of the United States.

Minyard Stores present two counter points wherein they challenge the right of the relator to present the issues by habeas corpus proceedings. It being the contention that the injunction having become final and no appeal having been taken, the violation thereof as was shown in this case after the finality of a valid injunction amounts in law to constructive contempt, and the habeas corpus proceeding being a collateral attack upon the judgment, such judgment must be absolutely void to be subject to such an attack. We understand the contention to be that the judgment is not absolutely void for the reason that the question of whether a business "affects" commerce so as to bring it within the jurisdiction of the National Labor Relations Board, is a question of fact to be determined by the trial court and reviewed on appeal, and not by a habeas corpus proceeding. Minyard Stores in this connection, alleged that none of the stores' business was done in interstate commerce, and that none of its business "affected" interstate commerce. The relator alleged that the stores were engaged in business "affecting" interstate commerce. Both parties introduced evidence in support of their respective pleadings. The trial court after hearing the evidence granted the temporary injunction and overruled the motion to dismiss.

We held in the case of Dallas General Drivers v. Wamix, 156 Texas 408, 295 S.W. 2d 873, that "when a suit seeking injunctive relief against labor practices is filed in a state court that court will be held to have jurisdiction unless the evidence shows that: (1) the activity is one coming within the area covered by the Labor Management Relations Act, (2) the business is one affecting interstate commerce."

The relator contends that he complied with the rule announced in the Wamix case, supra, and satisfied his burden of

showing that the Minyard Corporations were engaged in business affecting interstate commerce:

Ex Parte Morris, 147 Texas 140, 215 S.W. 2d 598, was a habeas corpus case, and in that case we announced the rule to be:

"In habeas corpus proceedings we do not consider the evidence in the sense that we act as a court of review, but we do consider the entire record, including the evidence offered at the contempt hearing to determine whether or not due process had been accorded relator. Ex Parte Fisher, 146 Texas 328, 206 S.W. 2d 1000; Ex Parte Henry, 147 Texas 315, 215 S.W. 2d 588."

In the case of Ex Parte Henry, supra, this Court said:

"Under our holding in Ex Parte Fisher, 146 Texas 328, 206 S.W. 2d 1000, we are authorized to consider the facts proved in the contempt hearing to determine whether they were sufficient to confer jurisdiction upon the trial court to hold relators in contempt. That examination discloses that they were not so sufficient and that the contempt commitment was, therefore, void."

■ Applying the principles of law announced in Ex Parte Morris, supra, and Ex Parte Henry, supra, to the present case, it is our duty to consider the evidence to determine whether the relator discharged his burden of showing that the respondents were engaged in a business affecting interstate commerce. In the event the evidence shows that the respondents were engaged in a business affecting interstate commerce, the trial court was without jurisdiction to enter the contempt order, provided, of course, the record also shows that the acts and conduct of relator constituted an unfair labor practice as defined under Section 8 (29 U.S.C.A. #158).

In the course of the contempt proceedings, evidence was introduced, including all the evidence that was introduced at the hearing on the petition for injunction and relator's motion to dismiss. The relator specially noted that the evidence introduced in the former hearing was presented for the purpose of showing that the trial court lacked jurisdiction of the subject matter involved in the injunction hearing, and, therefore, was without authority to punish relator for contempt. See Ex Parte Henry, supra.

■ Our examination of the record discloses that the Minyard stores, whether considered as a combined unit or treated separately, are engaged in a business affecting interstate commerce. The proof shows that the total annual purchases of all Minyard stores from Associated Wholesale Grocery, a Texas corporation, is approximately two and a half million dollars of which approximately forty per cent originated from outside the State of Texas. It is argued that such proof does not meet the test, in that, these purchases were made from a Texas corporation with its office in Dallas, Texas, and, therefore, cannot be considered as purchases of out-of-state merchandise. We do not agree with this contention. It is immaterial whether the purchases were made outside the state or indirectly from another firm within the state. Proof of either situation is sufficient. See San Diego Cold Storage Co. (1939), 17 NLRB 422, and NLRB v. Sunshine Mining Co., 110 Fed. 2d 780, cert. denied, 312 U.S. 678, 61 Sup. Ct. 447, 85 L. Ed. 1118.

It follows, therefore, that the trial court had no authority to punish relator for contempt on the theory that Minyard Stores were not engaged in a business affecting interstate commerce. This holding sustains relator's contention that Minyard Stores were engaged in a business affecting interstate commerce.

■ We next consider relator's contention that the trial court lacked jurisdiction to issue the injunction or to hold relator in contempt on the ground that the record shows that the relator was charged with conduct, which constitutes an unfair labor practice under the Labor Management Relations Act of 1947, as amended. The contention being that in such a situation as we have here the National Labor Relations Act pre-empts the field in favor of federal authority, and, therefore, all authority has been withdrawn from state power. We agree with this contention. We do not have the question here as in the case of International Brotherhood of Teamsters, Local 675, A.F.L. et al v. Vogt, Inc., 354 U.S. 284, 77 Sup. Ct. 1166, 1 L. Ed. 2d 1347 decided by the United States Supreme Court on June 17, 1957. In that case Vogt, Inc. was engaged in an intrastate business. The court was required to consider only the limits imposed by the Fourteenth Amendment on the power of a state to enjoin picketing. It did not involve the question of whether jurisdiction of the case lies in the federal or state courts as we have here. However, we think the Vogt case is authority for holding that the acts and conduct involved in our case bring the cause within the purview of the National Labor Relations Act. In the Vogt

case, the contention was made "that the picketing of plaintiff's premises has been engaged in for the purpose of coercing, intimidating and inducing the employer to force, compel, or induce its employees to become members of defendant labor organizations, and for the purpose of injuring the plaintiff in its business because of its refusal to in any way interfere with the rights of its employees to join or not join a labor organization." The Wisconsin Supreme Court, in passing upon this question, said:

"One would be credulous, indeed, to believe under the circumstances that the union had no thought of coercing the employer to interfere with its employees in their right to join or refuse to join the defendant union." Vogt v. International Brotherhood of Teamsters Local 695, 270 Wisc. 321g, 74 N.W. 2d 753.

The Court held that the acts and conduct described in that case were for an unlawful purpose since Wisconsin #111.06 (2) made it an unfair labor practice for an employee individually or in concert with others to coerce, intimidate or induce any employer to interfere with any of his employees in the enjoyment of their legal rights. The Supreme Court of the United States upheld the Wisconsin Supreme Court stating that the Court properly drew the inference from the facts that the picketing was to coerce the employer to put pressure on his employees to join the Union, in violation of the declared policy of the state. In this connection, the Court, in effect, held that the Congress of the United States had declared a similar policy by the enactment of Section 8 of the Taft-Hartley Act, 61 Stat. 140, 29 U.S.C.A., Section 158.

■ As revealed by the pleadings outlined above, Minyard Stores alleged that the defendants, including relator, were engaged in conduct which constituted a "threat, force, intimidation or coercion" as to the right of persons to work without denial of employment on account of their nonmembership in any labor union or organization, and that the picketing was for "the object of urging, compelling, forcing, or coercing the plaintiff to recognize or bargain with said defendants, and urging, compelling, forcing ,or coercing the employees of the plaintiff to join the defendant union or select it as their representative, which said defendant Union is not the representative of any of the employees of the plaintiff." In the beginning of this opinion we have set out the terms of the writ of injunction. It is clear from the pleadings that the relator was engaged in acts made unlaw-

ful by the laws of Texas, but it is equally clear that such acts constituted unfair labor practices under 29 U.S.C.A. Sec. 158 (b). Since the Act (Taft-Hartley) contains complete administrative and judicial remedies to prevent a continuation of such acts, and since the respondents were engaged in a business affecting interstate commerce, the State District Court lacked jurisdiction to issue an injunction. It seems to be well settled that a state may not enjoin under its own labor statute conduct which has been made an unfair labor practice under Sec. 8, 29 U.S.C.A. Section 158, Garner v. Teamsters Union, 346 U.S. 485, 98 L. Ed. 228, 74 Sup. Ct. 161; Weber v. Anheuser-Busch, Inc., 348 U.S. 468, 99 L. Ed. 546, 75 Sup. Ct. 480. The relevant sections of the Taft-Hartley Act or the Labor Management Relations Act are Sections 7, 8 (b) (1) and 8 (b) (2). Section 7 reads:

"Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 8 (a) (3)."

Section 8 (b) (1) provides that it shall be an unfair labor practice for a labor organization or its agents to "restrain or coerce" employees in the exercise of the rights guaranteed in Section 7. Section 8 (b) (2) provides that it shall be an unfair labor practice for a labor organization or its agents "to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a) (3) * * *" i.e., "discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization * * *."

It is also clear that the United States Supreme Court has held that the pre-emption doctrine applies whether the conduct charged is proscribed or protected by the federal statute. In the Weber case, supra, the court said:

"Where the facts reasonably bring the controversy within the sections prohibiting these practices, and where the conduct, if not prohibited by the federal Act, may be reasonably deemed to come within the protection afforded by that Act, the state court must decline jurisdiction in deference to the tribunal

which Congress has selected for determining such issues in the first instance." Weber v. Anheuser-Busch, Inc., 348 U.S. 468, 481, 75 Sup. Ct. 488, 99 L. Ed. 546.

We construe this holding of the Supreme Court to mean that even though the conduct is in violation of state law and the policy of the state as prescribed · in its legislative enactments, the state court should decline jurisdiction in the first instance if the plaintiffs, as they did here, plead unfair labor practice facts reasonably bringing the controversy within the sections of Taft-Hartley prohibiting those practices, and where the conduct, if not prohibited by the federal Act, may be reasonably deemed to come within the protection afforded by the Act. See Garner v. Teamsters, supra; Amalgamated Meat Cutters & Butchers Workmen of N. A., Local No. 756 v. Johnson, 178 Kan. 405, 419, 286 Pac. 2d 182.

The recent cases of Guss v. Utah Labor Relations Board, 353 U.S. 1, 1 L. Ed..2d 201, 77 Sup. Ct. 598, 32 CCH Labor Cases; Amalgamated Meat Cutters and Butcher Workmen of N. A., Local No. 427 v. Fairlawn Meats, Inc., 353 U.S. 20, 1 L. Ed. 2d 613, 77 Sup. Ct. 604, 32 CCH Labor Cases, and San Diego Building Trades v. Garmon, 353 U.S. 26, 77 Sup. Ct. 607, 1 L. Ed. 2d 618, 32 CCH Labor cases, remove all doubt that has heretofore existed as to whether Congress, by vesting in the National Labor Relations Board jurisdiction over labor relations matters affecting interstate commerce, has completely displaced state power to deal with such matters. In the Guss case the Court said: "The question presented by this appeal * * * is whether Congress, by vesting in the National Labor Relations Board jurisdiction over labor relations matters affecting interstate commerce, has completely displaced state power to deal with such matters where the Board has declined or obviously would decline to exercise its jurisdiction but has not ceded jurisdiction pursuant to the proviso to Sec. 10 (a) of the National Labor Relations Act. * * *."

This case goes further and holds that the state courts are without power and lack jurisdiction to act even though the Board has declined or obviously would decline to exercise its jurisdiction, but has not ceded jurisdiction pursuant to the proviso to 10 (a) of the National Labor Relations Act. Section 10 (a) reads:

"The Board is empowered, as hereinafter provided, to prevent any person from engaging in any unfair labor practice (listed in Section 8) affecting commerce. This power shall · not be affected by any other means of adjustment or prevention that

has been or may be established by agreement, law, or otherwise: Provided, That the Board is empowered by agrement with any agency of any State or Territory to cede to such agency jurisdiction over any cases in any industry (other than mining, manufacturing, communications, and transportation, except where predominantly local in character) even though such cases may involve labor disputes affecting commerce, unless the provision of the State or Territorial statute applicable to the determination of such cases by such agency is inconsistent with the corresponding provision of this Act or has received a construction inconsistent therewith."

The National Board has not entered into any cession agreement with The State of Texas or any agency of this state pursuant to this section. The court in the Guss case refused to uphold the contention that to deny the state jurisdiction would create a vast "No-Man's Land," subject to regulation by no agency or court. That same contention is made here. The court said: "Congress has expressed its judgment in favor of uniformity. Since Congress' power in the area of commerce among the states is plenary, its judgment must be respected whatever policy objections there may be to creation of a No-Man's Land. Congress is free to change the situation at will." Thus far Congress has not seen fit to change the situation, and, until it does and particularly in the light of the Guss case, supra, and others following, this court must follow the law as written by the Congress and construed by the Supreme Court of the United States. The Fairlawn case, supra, is one very similar on the facts to our case. The court held that Fairlawn was engaged in business affecting interstate commerce, and that, even assuming the National Labor Relations Board would decline jurisdiction, the state court had no power to enjoin the union conduct proved, because conduct of that kind was regulated by the National Labor Relations Act. It was urged in the Fairlawn case that state action should be permitted within the area of commerce which the National Board has elected not to enter when such action is consistent with the policy of the National Act. The court rejected this contention stating that "this case is an excellent example of one of the reasons why, it may be, Congress was specific in its requirement of uniformity." The court held that Congress did not leave it to state labor agencies, to state courts or to the Supreme Court of the United States to decide how consistent with federal policy state law must be. "The power to make that decision in the first instance was given to the National Labor Relations Board, guided by the language of the provision to Section 10(a)."

■ The fact that the conduct alleged violates the statutes of this state is not sufficient to give the courts of this state jurisdiction. See the cases of Kerrigan Iron Works, Inc. v. Cook Truck Lines, Inc. et al., Court of App. of Tenn., 296 S.W. 2d 379, and Farnsworth & Chambers Company, Inc. v. Local Union 429, International Brotherhood of Electrical Workers, AFL, etc., Tenn. Sup. Ct., 299 S.W. 2d 8. Both of these cases upheld state court jurisdiction, but the Supreme Court of the United States granted a petition for writ of certiorari in each case and reversed the holdings of the Tennessee Courts, citing as authority in the first case the Weber v. Anheuser-Busch, Inc., supra, and General Drivers, etc. v. American Tobacco Co., Inc., 348 U.S. 978, 75 Sup. Ct. 569, 99 L. Ed. 762. See Teamsters C. H. & T. Drivers v. Kerigan Iron Works, 353 U.S. 968, 77 Sup. Ct. 1055, 1 L. Ed. 1133. In the second case, 353 U.S. 969, 77 Sup. Ct. 1056, 1 L. Ed. 2d 1133, the Court cited as authority the Weber and Garner cases, supra. Of course, the state courts have jurisdiction to grant injunctions in cases to prohibit conduct amounting to threats of violence or the provoking of violence, or violence itself. It was so held as late as December 9, 1957, in the case of James E. Youngdahl, W. Chandler, Ruth Ralph, Amalgamated Clothing Workers of America, CIO, et al v. Rainfair, Inc., 355 U.S. 131, 2 L. Ed. 2d 151, 78 Sup. Ct. 206. However, the Court in the same case reversed the state court on its holding that the state had jurisdiction to enjoin all picketing or patrolling of the respondent's premises, particularly peaceful picketing. The decision has no application here for the reason that the case presents no question of a breach of the peace, or threats of violence or violence.

Obviously the major purpose of the peaceful picketing in our case was to coerce the employees to join the union. The record shows that the Minyard stores sustained a loss of approximately $100.00 per day while the picketing was being conducted. This, no doubt, was calculated to cause the Minyards to, in turn, take action amounting to an interference with the free choice of the employment in the matter of organization. In the case of San Diego Building Trades Council et al. v. Garmon et al., supra, where a similar factual situation to the present case was involved, the National Labor Relations Board declined to act, and it was the contention that under such circumstances, the state courts were free to assume jurisdiction. The State Court of California so acted and, after a hearing, issued an injunction enjoining the union (not representing a majority of the employees) from peaceful picketing. The court also awarded damages. In our case no damages were awarded, but the picketing

was restrained, as above outlined. On March 25, 1957, the Supreme Court of the United States reversed the judgment of the state court citing in support of its decision the Guss and Fairlawn cases, supra, both of which were decided on the same day as the Garmon case. The case was recommended to the Supreme Court of California for further proceedings not inconsistent with the United States Supreme Court's opinion, and the opinions in the Gus v. Utah Labor Relations Board and Amalgamated Meat Cutters v. Fairlawn Meats, Inc., supra.

■ In the case of Truck Drivers, Chauffeurs, Warehousemen and Helpers, Local No. 941 v. Whitfield Transportation, Inc., 154, Texas 91, 273 S.W. 2d 857, 860, this Court, in declining to apply the pre-emption doctrine announced in Garner v. Teamsters, etc. Union, supra, said that "The Garner opinion observes with evidently studied purpose that in that case it did not appear 'that the federal Board (N.L.R.B.) would decline to exercise its powers once its jurisdiction was invoked.'" The holdings in the Guss, Fairlawn, and Garmon cases, supra, render it immaterial what the Garner case observed. These recent decisions of the United States Supreme Court definitely hold that the Board's declination of power would not give the state jurisdiction. The case of Cain, Brogden & Cain, Inc. v. Local Union No. 47, etc., 155 Texas 304, 285 S.W. 2d 942, 950, was one where it was shown in the record that application had been made to the Board (N.L.R.B.) requesting it to assume jurisdiction and that the N.L.R.B. officials were of the opinion that the Board was without jurisdiction. The record further showed that in view of the tentative view expressed by the officials of the Board, the application was withdrawn without prejudice and suit was filed in the state court. We held that the Board's informal declination to take jurisdiction was correct, and, in effect, upheld the jurisdiction of the Texas courts. Here again, we must hold that what we said in the Cain case on this particular question can no longer be declared to be the law in the light of the three opinions above discussed. This Court, in construing the United States Constitution and the federal statutes is duty bound to follow the Supreme Court of the United States. We interpret the Guss, Fairlawn, and Garmon cases, supra, to mean that the only power a state court has in an action involving a labor controversy, when its jurisdiction is challenged, is to determine that question for itself. The state court under such circumstances cannot and should not stop its proceedings and refer the matter to the National Labor Relations Board. It has authority to determine its jurisdiction without the interference of the fed-

eral courts. Amalgamated Clothing Workers v. Richman Bros., 348 U.S. 511, 99 L. Ed. 600, 75 Sup. Ct. 452.

We are convinced from a study of the Supreme Court's opinion in the Fairlawn case, supra, together with the motion for rehearing filed by Fairlawn that the court gave consideration to the rights of the employer from the standpoint of the Fifth Amendment to the Constitution of the United States. The Stores argue to the contrary. The issue of due process of law was squarely in the case. The petitioner, Fairlawn, devoted the major portion of its motion for rehearing to argument that the Supreme Court completely ignored and did not consider the rights of the employer under the Fifth Amendment. The court in its original opinion in the Guss case held that the proviso contained in Section 10 (a), supra, is the exclusive means whereby states may be enabled to act concerning the matters which Congress entrusted to the National Labor Relations Board. This decision was reached in spite of the contention that to deny the state jurisdiction would create a vast No-Man's land, subject to no regulation by any agency or court. In the motion for rehearing in the Fairlawn case it was argued that the effect of the decision was to deprive respondent of its constitutional rights without due process of law in violation of the Fifth, Tenth, and Fourteenth Amendments to the Constitution of the United States. It was argued in the motion that "Due Process of law, in its constitutional and primary sense as defined by the United States Supreme Court requires that every man shall have the protection of his day in court," (citing Traux v. Corrigan, 257 U.S. 312, 42 Sup. Ct. 124, 66 L. Ed. 254, 263). It was further argued: "That right is abridged and denied where a litigant is banished to a judicial No-Man's land where no tribunal has jurisdiction to entertain, hear, and decide his complaint." The court overruled the motion for rehearing and, in so doing, we believe it effectively disposed of the question adversely to respondent's contention in that case. In view of such action, we hold against Minyard Stores' contention that due process has been denied in the present case.

There is another reason why the claim of lack of due process because of the No-Man's land theory must be rejected in this case. The respondents have not requested the National Labor Relations Board to assert jurisdiction. Relator asserts in a reply brief filed in this cause that the United States Supreme Court has impliedly invited mandamus action as to the refusal of the Board to assert jurisdiction in a case such as we have here. The brief points up this matter by saying in a footnote that "In the

Guss case it took occasion to repeat its dictum in Bethlehem Steel Co. v. New York Labor Board, 330 U.S. 767, 67 Sup. Ct. 1026, 91 L. Ed. 1234, 12 CCH Labor cases #51,245, in which it noted that the election of the National Board to decline jurisdiction in certain types of cases, for budgetary or other reasons presents a different problem which we do not now decide."

The respondents rely upon the Vogt case, supra, to support their contention that the state court had jurisdiction. As heretofore pointed out, this case has no application here. It is clear from reading the opinion that no question of interstate commerce was involved or that Vogt, Inc. was engaged in a business affecting interstate commerce. The case itself and the series of cases discussed therein merely affirmed the doctrine that the cases beginning with Giboney v. Empire Storage & Ice Co., 336 U.S. 490, 69 Sup. Ct. 684, 93 L. Ed. 834, established that the state, in enforcing some public policy, whether of its criminal or civil law, and whether announced by its legislature or its courts, could constitutionally enjoin peaceful picketing aimed at preventing effectuation of such policy. It is clear from a reading of the case that no question of state jurisdiction versus federal jurisdiction was involved.

■ Since we have held that the conduct is an activity within the Labor Management Relations Act, and that the business of the Minyard Stores is one affecting interstate commerce, it follows that the state court was without jurisdiction to grant the petition for injunction. This being true, the judgment granting the injunction was void, and the relator cannot be held in contempt of a void judgment.

The relator having heretofore been released from the custody of the Sheriff of Dallas County, Texas, upon the furnishing of bond, all in accordance with the order of this Court, is now completely discharged and found not guilty of contempt, and he and his sureties are released from further liability by virtue of the terms of said bond.

Opinion delivered January 29, 1958.

Rehearing overruled February 26, 1958.