**Opinion issued September 27, 2012**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-11-00197-CV

———————————

**STATE OF TEXAS, Appellant**

**V.**

**CLEAR CHANNEL OUTDOOR, INC., Appellee**

---

**On Appeal from County Civil Court at Law No. 3**
**Harris County, Texas**
**Trial Court Case No. 857472**

---

## MEMORANDUM OPINION

The State of Texas, appeals from the trial court's grant of summary judgment against it on liability and subsequent rendition of judgment against it and in favor of Clear Channel Outdoor, Inc. following a trial on damages in an inverse

condemnation proceeding.  In three issues, the State argues (1) the trial court erred by ruling as a matter of law that the State had taken Clear Channel's billboards as part of its condemnation of the land; (2) the trial court abused its discretion by allowing certain testimony from Clear Channel's expert on valuation of the billboards; and (3) the evidence is legally and factually insufficient to support the trial court's award on damages.

We affirm the judgment of the trial court.

## Background

In 2001, Clear Channel obtained a leasehold interest in a parcel of land, identified as Parcel 709, located in Harris County within view of the Katy Freeway.  In 2004, Clear Channel obtained a leasehold interest in an abutting parcel of land, identified as Parcel 708.  Pursuant to the leases, Clear Channel erected and maintained two billboards on the parcels.  The billboards back each other and form a V shape, each being visible to opposing directions of traffic on the Katy Freeway.

In connection with a planned freeway expansion, the State petitioned to condemn Parcels 708 and 709 in separate proceedings and named the landowner and Clear Channel as defendants in each proceeding.  Each of the county civil courts appointed a panel of special commissioners to determine the fair market value of the properties.  Clear Channel filed objections to the special

2

commissioners' award in each proceeding and asserted claims of inverse condemnation, seeking compensation for the billboards.

The State brought a plea to the jurisdiction in each proceeding. Each plea was denied, and the State appealed. Each denial was affirmed.[1]

During the time that the State brought its pleas to the jurisdiction, Clear Channel brought a motion for partial summary judgment on its interest in Parcel 709, arguing that the billboard on Parcel 709 was part of the realty, that the billboard, therefore, had been condemned, and that the State was required to adequately compensate Clear Channel for the condemned property. The trial court for that proceeding granted the motion for summary judgment.

After the denials to the pleas to the jurisdiction were affirmed on appeal, the State had settled most of its condemnation claims for both parcels. The State had resolved the amount of compensation to be paid to the owners of the parcels and had agreed on the amounts owed to Clear Channel on all of its leasehold interests other than the billboards.

After the interlocutory judgments were entered, the trial court in the proceeding for Parcel 708 granted the parties' agreed motion to consolidate the two proceedings. Clear Channel subsequently brought a partial motion for summary

---

[1] *See State v. Clear Channel Outdoor, Inc.*, 274 S.W.3d 162, 166 (Tex. App.—Houston [1st Dist.] 2008, no pet.); *State v. Clear Channel Outdoor, Inc.*, No. 14-07-00369-CV, 2008 WL 2986392, at *5 (Tex. App.—Houston [14th Dist.] July 31, 2008, no pet.).

judgment on its interest in the billboard on Parcel 708, arguing the State had condemned its interest in the billboard on that parcel. The trial court granted this motion for summary judgment as well.

The parties tried the remaining damages issues to a jury. Clear Channel presented Rodolfo Aguilar at trial as its expert for valuation of the billboards. Aguilar presented four methods for valuing the billboards: one based on the cost method, two based on the comparable sales method, and one based on the income method. The State objected to and sought to exclude Aguilar's testimony regarding the comparable sales methods and the income method. The trial court denied these objections and admitted all of Aguilar's testimony regarding valuation.

## Condemnation of Billboards

In its first issue, the State argues the trial court erred by ruling as a matter of law that the State had taken Clear Channel's billboards as part of its condemnation of the land.

### A. Standard of Review

The summary-judgment movant must conclusively establish its right to judgment as a matter of law. *See MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986). Because summary judgment is a question of law, we review a trial court's

summary judgment decision de novo. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).

To prevail on a "traditional" summary-judgment motion, asserted under Rule 166a(c), a movant must prove that there is no genuine issue regarding any material fact and that it is entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Little v. Tex. Dep't of Criminal Justice*, 148 S.W.3d 374, 381 (Tex. 2004). A matter is conclusively established if reasonable people could not differ as to the conclusion to be drawn from the evidence. *See City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005).

When a party moves for summary judgment on a claim for which it bears the burden of proof, it must show that it is entitled to prevail on each element of its cause of action. *See Parker v. Dodge*, 98 S.W.3d 297, 299 (Tex. App.—Houston [1st Dist.] 2003, no pet.). The party meets this burden if it produces evidence that would be sufficient to support an instructed verdict at trial. *Id.*

To determine if there is a fact issue, we review the evidence in the light most favorable to the nonmovant, crediting favorable evidence if reasonable jurors could do so, and disregarding contrary evidence unless reasonable jurors could not. *See Fielding*, 289 S.W.3d at 848 (citing *City of Keller*, 168 S.W.3d at 827). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002).

**B.     Analysis**

Clear Channel sought summary judgment on the liability portion of its inverse condemnation claim.  "Inverse condemnation occurs when (1) a property owner seeks (2) compensation for (3) property taken for public use (4) without process or a proper condemnation proceeding."  *City of Houston v. Boyle*, 148 S.W.3d 171, 178 (Tex. App.—Houston [1st Dist.] 2004, no pet.).  The trial court granted Clear Channel's motion.

On appeal, the State's challenges to the trial court's grant of summary judgment fall into three categories: (1) whether the billboards must be considered part of the realty; (2) whether the State intended to condemn the billboards; and (3) whether Clear Channel consented to any alleged damages.  Before we address each of these matters, however, we must address Clear Channel's argument that this issue has been waived by the State.

**1.     Waiver**

Clear Channel argues, "The State has not assigned error to the summary judgments and has therefore waived its right to challenge those judgments."  This is incorrect.

As pointed out by the State, the Texas Rules of Appellate Procedure were amended in 1997.  One of those changes was allowing an appellant to present either issues or points of error.  *See* TEX. R. APP. P. 38.1(f) & Notes & Comments.

When a party raises a complaint in an issue, an appellate court must "look to the argument to determine the nature of the complaints. . . . If the court is able to ascertain the nature of the complaint from the argument, the issue will be preserved for appellate review." John Hill Cayce, Jr., Anne Gardner & Felicia Harris Kyle, *Civil Appeals in Texas: Practicing Under the New Rules of Appellate Procedure*, 49 BAYLOR L. REV. 867, 947–48 (1997).

In its brief on the merits, the State raised an issue complaining of the trial court's determination that the billboards were part of the condemned realty. This is enough to present the matter for appellate review. It has been the practice in Texas for almost 15 years that failure to assign a point of error to the specific interlocutory summary judgments containing the trial court's ruling does not waive any error. *See id.* at 947 (noting that "[t]he new 'issues presented' practice signals the intention of the Supreme Court to have all appeals judged on the merits of controversies rather than hypertechnical waiver issues").

We hold that the State has not waived this issue.

### 2. Inclusion of the Billboards with the Realty

Clear Channel claimed a right to compensation for its billboards under the federal and state constitutions. *See* U.S. CONST. amend. V (providing "nor shall private property be taken for public use, without just compensation"); TEX. CONST.

7

art. I, § 17 (providing "[n]o person's property shall be taken . . . without adequate compensation being made").

"[I]t is generally held that the power to take property for public use extends to every species of property and every character of right, title, or interest therein." *Hous. N. Shore Ry. Co. v. Tyrrell*, 98 S.W.2d 786, 793 (Tex. 1936). When the State condemns real property, however, it is not required to condemn the personal property contained on the premises or reimburse the owner for the expense of removing the property. *Luby v. City of Dallas*, 396 S.W.2d 192, 198 (Tex. Civ. App.—Dallas 1965, writ ref'd n.r.e.).

The State argues that the billboards are personalty and that, accordingly, it is not obligated to treat them as part of the condemned property. Clear Channel argues that the billboards are part of the realty and that, accordingly, the State must give just compensation for its condemnation.

The Texas Supreme Court has held, "It is a general rule that improvements situated upon the portion of land taken are to be considered as a part of the realty." *State v. Carpenter*, 89 S.W.2d 979, 980 (Tex. 1936); *see also Almota Farmers Elevator & Warehouse Co. v. United States*, 409 U.S. 470, 477 n.5, 93 S. Ct. 791, 796 n.5 (1973) (holding "[i]f the . . . fixtures are attached to the real estate, they must be treated as real estate in determining the total award"). While the court identified this as a general rule, it followed with only one exception: "[I]f the

8

improvements which are situated upon the portion of land taken are essential to the use and enjoyment of the remainder of the land, or if their replacement, by removal or reconstruction, is necessary in order to obviate depreciation in the value of the residue, the cost of removal, and/or reconstruction and/or replacement may be a proper inquiry in connection with the issue of diminished market value of the remainder." *Carpenter*, 89 S.W.2d at 980–81. In other words, the sole exception is when an improvement would need to be removed and relocated to preserve the value of the remainder, which has not been condemned. *See id.*

There has been no claim, by the State or Clear Channel, that relocation of the billboards is necessary to preserve the value of any remainder. It is undisputed that the billboards are "improvements situated upon the portion of land taken." *See id.* at 980. Accordingly, they are part of the realty, and the State must give Clear Channel adequate compensation for them. *See id.*; *see also State v. Clear Channel Outdoor, Inc.*, 274 S.W.3d 162, 165 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (applying *Carpenter* in previous appeal between parties).

The State argues that we should determine whether the billboards are a fixture in order to determine whether they are part of the realty. The State then applies the test for what constitutes a fixture to this case, citing *Logan v. Mullis*,

9

686 S.W.2d 605, 607 (Tex. 1985). We have already held that *Logan* does not apply to condemnation claims.[2] *Clear Channel Outdoor*, 274 S.W.3d at 165.

The State points out that Clear Channel agreed with both landowners in the leases that the billboards would be treated as Clear Channel's personal property. The State argues that this should establish that the billboards are, in fact, personal property and not part of the realty. The United State Supreme Court has already held that this is not a relevant inquiry. Such requirements in leases "exist[] entirely for the protection of the tenant, and cannot be invoked by the condemnor. If the buildings or fixtures are attached to the real estate, they must be treated as real estate in determining the total award." *Almota*, 409 U.S. at 477 n.5, 93 S. Ct. at 796 n.5; *see also Brazos River Conservation & Reclamation Dist. v. Adkisson*, 173 S.W.2d 294, 300 (Tex. Civ. App.—Eastland 1943, writ ref'd[3]) (holding "that an agreement between landlord and tenant that the tenant shall have the right to

---

[2]    In its reply brief, the State of Texas acknowledges this previous holding. It explains that it presented this argument, in part, to preserve it for review by the Supreme Court of Texas. It also invites this Court to overrule or restrict the application of our previous ruling. We decline this invitation.

[3]    In cases decided before September 1, 1997, "writ refused" identifies an opinion as having "equal precedential value with the Texas Supreme Court's own opinions." *Hyundai Motor Co. v. Vasquez*, 189 S.W.3d 743, 754 n.52 (Tex. 2006) (citing *The Greenbook: Texas Rules of Form* (Texas Law Review Ass'n ed., 10th ed. 2005)). While the Texas Supreme Court relied on *The Green Book* for the authority that the effect of this designation arose in 1927, we note that the most recent edition indicates that the effect of this designation arose in 1892. *The Greenbook: Texas Rules of Form* app. E (Texas Law Review Ass'n ed., 12th ed. 2010).

remove improvements placed upon the premises by him shall not inure to the benefit of the condemnor, is supported by considerable authority").

From all of these rules, it follows that, "[i]f personalty would be a fixture if attached to the land by the fee owner of the land, then a condemning authority must pay for such property as real estate in a condemnation action." *Harris Cnty. Flood Control Dist. v. Roberts*, 252 S.W.3d 667, 670 (Tex. App.—Houston [14th Dist.] 2008, no pet.). Even accepting the State's characterization of the Billboards as fixtures under *Logan*, then, the State is still obligated to give adequate compensation for them in a condemnation proceeding.

The State also seeks to avoid application of these rules by arguing that the billboards are treated as personal property by local taxing entities and the Internal Revenue Code and that other states treat billboards as personal property. Regardless of how persuasive the other states' holdings may be, we are bound by the holdings of the Supreme Court of Texas and the United States Supreme Court. *Lubbock Cnty. v. Trammel's Lubbock Bail Bonds*, 80 S.W.3d 580, 585 (Tex. 2002) (requiring intermediate appellate courts to follow supreme court precedent and leave to the supreme court the matter of abrogating or modifying its own precedent); *Ex parte Twedell*, 309 S.W.2d 834, 844 (Tex. 1958) (holding Texas courts are required to follow United State Supreme Court in its application of the United States Constitution and federal law). To that end, none of the holdings by

the Supreme Court of Texas or the United States Supreme Court allow for consideration of how property is characterized for tax purposes in determining whether property is part of the condemned realty. As a result, how the billboards are treated for tax purposes is not relevant to our inquiry in this appeal.

### 3. Intent to Take

The State correctly argues that, to prevail on an inverse condemnation proceeding, the plaintiff must establish that the State intended to take the property in question. *See Tarrant Reg'l Water Dist. v. Gragg*, 151 S.W.3d 546, 555 (Tex. 2004). The question of intent is typically only relevant in regulatory takings cases, however. *See, e.g.*, *id.* at 554 (concerning regulatory taking by construction of reservoir near property).

Here, it is undisputed that the State has initiated condemnation proceedings on the real property upon which the billboards stand as well as the lease for the property held by Clear Channel. The State appears to argue that, because it does not want to compensate Clear Channel for the billboards, it lacks the intent to condemn the billboards. As we have held above, the billboards are part of the condemned property. Because the State has intended to condemn the property, it follows that the State has intended to condemn the billboards, regardless of whether it wanted to condemn the billboards.

12

### 4. Consent

Finally, the State argues that Clear Channel consented to the taking of its billboards. The State correctly asserts that article one, section 17 of the Texas Constitution applies only when property is taken without the owner's consent. *See* TEX. CONST. art. I, § 17. The State argues that Clear Channel consented to the taking of its billboards because "it intentionally declined the opportunities offered pursuant to [the Texas Department of Transportation]'s Relocation Assistance Program." The Relocation Assistance Program allows municipalities to pay relocation benefits for billboards relocated under the program. *See* 43 TEX. ADMIN. CODE §§ 21.195, .196 (2011) (Tex. Dep't of Transp., Relocation of Sign within Municipality, Relocation Benefits). Under this program, the City of Houston has established a process for relocation of billboards and payment of related relocation benefits. Houston, Tex., Building Code ch. 46, § 4617.[4]

As Clear Channel points out, however, it was not required to relocate its billboards under this program. *Id.* § 4617(b) (providing "[n]othing contained in this section shall be construed to abrogate the right of a sign owner . . . to refuse to accept the proposal by the governmental unit for the alteration or relocation of a sign under this section and to choose instead to seek monetary compensation").

---

[4] Accessed through the City of Houston's website, *Details for Houston Sign Code*, http://documents.publicworks.houstontx.gov/document-center/doc_details/2498-houston-sign-code.html (last updated September 12, 2011).

Instead, Clear Channel had the choice to relocate its signs and obtain relocation benefits or to seek monetary compensation for the loss of the billboards. *Id.* The State cannot legitimately claim that a party given two choices loses its rights to the second by declining the first.

We hold that the trial court did not err by granting summary judgment on the liability portion of Clear Channel's inverse condemnation claim. We overrule the State's first issue.

## Evidence of Valuation of Billboards

In its second issue, the State argues the trial court abused its discretion by allowing certain testimony from Clear Channel's expert on valuation of the billboards.

## A.     Standard of Review

An expert's opinion must be relevant and reliable. *State v. Cent. Expressway Sign Assocs.*, 302 S.W.3d 866, 870 (Tex. 2009); *Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 726 (Tex. 1998). "Appraisal expertise is a form of 'specialized knowledge used to assist the trier of fact to determine a fact in issue.' It is therefore subject to *Gammill*'s relevance and reliability requirements." *Guadalupe-Blanco River Auth. v. Kraft*, 77 S.W.3d 805, 807 (Tex. 2002) (quoting TEX. R. EVID. 702).

We review the trial court's ruling on admission of an expert's opinion based on relevance and reliability for an abuse of discretion. *Cent. Expressway Sign Assocs.*, 302 S.W.3d at 870. A trial court does not abuse its discretion by admitting expert testimony if the testimony is relevant to the issues in the case and is based on a reliable foundation. *See id.*

In determining the reliability of an expert's opinion, the trial court must independently evaluate the underlying data. *Kraft*, 77 S.W.3d at 808; *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 713 (Tex. 1997). "If the foundational data underlying opinion testimony are unreliable, an expert will not be permitted to base an opinion on that data because any opinion drawn from that data is likewise unreliable." *Havner*, 953 S.W.2d at 714.

**B.     Analysis**

In a condemnation proceeding, the burden to establish the value of the condemned property is on the condemnee. *Religious of Sacred Heart of Tex. v. City of Hous.*, 836 S.W.2d 606, 613 (Tex. 1992). Texas has recognized three approaches to determining the market value of condemned property: the comparable sales method, the cost method, and the income method. *Cent. Expressway Sign Assocs.*, 302 S.W.3d at 871 (citing *City of Harlingen, v. Estate of Sharboneau*, 48 S.W.3d 177, 182 (Tex. 2001)). The comparable sales method is the preferred method for valuation, and the other two methods should only be used

"[w]hen comparable sales figures are lacking or the method is otherwise inadequate as a measure of fair market value." *Estate of Sharboneau*, 48 S.W.3d at 182, 183.

Clear Channel's valuation expert, Rodolfo Aguilar, valued the billboards based on all three methods for valuation and testified on the results of each of these methods. The State objected to Aguilar's testimony regarding the comparable sales method and the income method. The trial court denied these objections. The State raises each of these objections again on appeal. We begin with the income method. The State argues that Aguilar's income method was improperly based on advertising revenue. We disagree.

The State correctly argues that, in a condemnation proceeding, "income from a business operated on the property is not recoverable and should not be included in a condemnation award." *Cent. Expressway Sign Assocs.*, 302 S.W.3d at 871. However, any valuation method is meant "to approximate the amount a willing buyer would pay a willing seller for the property." *Id.*

While the income method, as its name suggests, values a property according to the income that it generates, this method has been approved by the Supreme Court of Texas as a proper valuation method in certain instances. *Estate of Sharboneau*, 48 S.W.3d at 183; *see also State v. Bristol Hotel Asset Co.*, 293 S.W.3d 170, 172 (Tex. 2009) (holding "the income approach is especially

16

appropriate when . . . property would be valued on the open market according to the amount of income it already generates"); *Cent. Expressway Sign Assocs.*, 302 S.W.3d at 871 (noting "[t]he income approach is appropriate when the property would be priced according to the rental income it generates"). The State cannot assert, then, that this is an impermissible method of valuation. We hold that the State has not established that the trial court abused its discretion by allowing Aguilar's testimony regarding the income method.

The State's argument for why it has been harmed by the admission of Aguilar's testimony regarding valuation of the billboards under the income method and under the sales comparison method is that, without *both* of these valuation methods, there would be legally insufficient evidence in the record to support the jury's verdict on the value of the billboards. The State raises this same argument again in its third issue: assuming the exclusion of Aguilar's valuation of the billboards both under the income method as well as under the sales comparison method, there is legally insufficient evidence to support the jury's verdict on the value of the billboards.

Because we have held that the trial court did not abuse its discretion by allowing Aguilar's testimony regarding the income method, the State's argument that the evidence is legally insufficient without *both* methods necessarily fails. For the reasons provided below, we hold that the evidence is legally sufficient to

support the jury's verdict on the valuation of the billboards based on the income method.  Accordingly, we do not need to determine whether the trial court abused its discretion in allowing Aguilar to testify about valuation of the billboards under the sales comparison method.  *See Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 253 (Tex. 2008) (not reaching sufficiency of the evidence to support other grounds for gross negligence when court had held that one ground was legally sufficient); *Hatton v. Grigar*, 66 S.W.3d 545, 557 (Tex. App.— Houston [14th Dist.] 2002, no pet.) (not reaching sufficiency of evidence to support finding of easement by prescription when legally and factually sufficient evidence existed of implied public dedication of land, which supported trial court's judgment).

We overrule the State's second issue.

## Sufficiency of the Evidence

In its third issue, the State of Texas argues that the evidence is legally insufficient to support the jury's determination of the value of the billboards.

### A.    Standard of Review

In a legal sufficiency, or "no-evidence" review, we determine whether the evidence would enable reasonable and fair-minded people to reach the verdict under review.  *City of Keller*, 168 S.W.3d at 822.  In making this determination, we will sustain a legal sufficiency challenge if the record shows one of the following:

18

(1) a complete absence of evidence of a vital fact, (2) rules of law or evidence bar the court from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a scintilla, or (4) the evidence establishes conclusively the opposite of the vital fact. *Id*. at 810. We credit favorable evidence if a reasonable fact-finder could, and we disregard contrary evidence unless a reasonable fact-finder could not. We consider the evidence in the light most favorable to the finding under review and indulge every reasonable inference that would support it. *Id*. So long as the evidence falls within the zone of reasonable disagreement, we may not substitute our judgment for that of the fact-finder. *Id*. at 822. The trier of fact is the sole judge of the credibility of the witnesses and the weight accorded to their testimony. *Id*. at 819. Although we consider the evidence in the light most favorable to the challenged findings, indulging every reasonable inference that supports them, we may not disregard evidence that allows only one inference. *Id*. at 822.

## B. Analysis

As is the case here, absent an objection to the jury charge, the sufficiency of the evidence is reviewed in light of the charge submitted. *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 715 (Tex. 2001). In two questions, the charge asked the jury to determine the fair market value of Clear Channel's interest in each of the

19

two properties—that is, the fair market value of Clear Channel's billboards—as of a certain date.

Aguilar's testimony regarding the income method of valuation for each of these billboards is legally sufficient evidence to support the jury's verdict on these questions. Aguilar testified that, for each billboard, he took "the billboard rent, only the billboard rent, not any other revenue" and deducted "the cost of running that billboard" to determine the "net operating income." He then applied an "overall capitalization rate," based on prevailing rates at the time in question, to the net operating income in order to derive the market value of the billboards.

The State's only complaint on appeal about this testimony is that it is inappropriately based on income, which we have overruled. The State provides no other objection to this testimony or the data upon which Aguilar relied, and we find no flaws in the legal sufficiency of the testimony or the underlying data. Accordingly, we hold that this evidence is legally sufficient to support the jury's verdict.

Because we have held this evidence is sufficient to support the jury's verdict, we do not need to determine whether Aguilar's valuation of the billboards under the comparable sales method is legally sufficient. *See Columbia Med. Ctr.*, 271 S.W.3d at 253 (not reaching sufficiency of the evidence to support other grounds for gross negligence when court had held that one ground was legally

sufficient); *Hatton*, 66 S.W.3d at 557 (not reaching sufficiency of evidence to support finding of easement by prescription when legally and factually sufficient evidence existed of implied public dedication of land, which supported trial court's judgment).

We overrule the State's third issue.

## Conclusion

We affirm the judgment of the trial court.


Laura Carter Higley
Justice

Panel consists of Justices Higley, Sharp, and Huddle.