**Affirm and Opinion Filed September 8, 2021**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-20-00988-CV**

**MARK LEE DICKSON AND RIGHT TO LIFE EAST TEXAS, Appellants**
**V.**
**THE AFIYA CENTER AND TEXAS EQUAL ACCESS FUND, Appellees**

**On Appeal from the 116th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-20-08104**

## OPINION ON REHEARING

Before Justices Osborne, Pedersen, III, and Nowell
Opinion by Justice Pedersen, III

We deny appellants' August 17, 2021 Motion for Rehearing. On our own motion, we withdraw our August 4, 2021 memorandum opinion and vacate our judgment of that date. We amend one sentence in our original opinion describing the Waskom Ordinance to be certain that it complies faithfully with the record. In all other respects our opinion remains the same. This is now the opinion of the Court.

Appellants Mark Lee Dickson and Right to Life East Texas appeal the trial court's order denying their Second Amended Motion to Dismiss under the Texas Citizens' Participation Act (the Motion to Dismiss). The Motion to Dismiss sought dismissal of all defamation and conspiracy claims brought by appellees, The Afiya

Center (TAC) and Texas Equal Access Fund (TEAF). Appellants raise five issues in this Court, contending: appellees failed to produce clear and specific evidence that appellants published a false statement of fact concerning appellees or that appellants acted with actual malice in publishing the statements at issue; appellants established affirmative defenses or constitutional protection of the statements at issue; and appellees failed to produce clear and specific evidence of a conspiracy between appellants or that Right to Life East Texas (RLET) can be held legally responsible for statements published by Dickson. We affirm the trial court's order.

## BACKGROUND

Dickson acknowledges in his brief that he "has been encouraging cities throughout Texas to enact ordinances that outlaw abortion within their city limits." Dickson likewise acknowledges his success in this endeavor, identifying seventeen cities that had passed such ordinances at the time of his briefing. The roots of this lawsuit lie in the first such ordinance, which was enacted by the City of Waskom.

### The Waskom Ordinance

The original Waskom Ordinance begins with a series of "Findings." For our purposes, the key finding states:

> WHEREAS, a surgical or chemical abortion is the purposeful and intentional ending of a human life, and is murder "with malice aforethought" since the baby in the womb has its own DNA, and at certain points in pregnancy has its own heartbeat and its own brainwaves . . .

The ordinance proceeds to a series of four "Declarations," which assert:

–2–

1. We declare Waskom, Texas to be a Sanctuary City for the Unborn.

2. Abortion at all times and at all stages of pregnancy is declared to be an act of murder with malice aforethought, subject only to the affirmative defenses described in Section C.3.

3. Organizations that perform abortions and assist others in obtaining abortions are declared to be criminal organizations. These organizations include, but are not limited to:

   (a) Planned Parenthood and any of its affiliates;

   (b) Jane's Due Process;

   (c) The Afiya Center;

   (d) The Lilith Fund for Reproductive Equality;

   (e) NARAL Pro-Choice Texas;

   (f) National Latina Institute for Reproductive Health;

   (g) Whole Woman's Health and Whole Woman's Health Alliance;

   (h) Texas Equal Access Fund.

4. The Supreme Court's rulings and opinions in *Roe v. Wade*, 410 U.S. 113 (1973), *Planned Parenthood v. Casey*, 505 U.S. 833 (1992), *Stenberg v. Carhart*, 530 U.S. 914 (2000), *Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292 (2016), and any other rulings or opinions from the Supreme Court that purport to establish or enforce a "constitutional right" to abort a pre-born child, are declared to be unconstitutional usurpations of judicial power, which violate both the Tenth Amendment and the Republican Form of Government Clause, and are declared to be null and void in the City of Waskom.

The ordinance goes on to declare abortion and aiding and abetting abortion to be "unlawful acts." In resolution of an earlier lawsuit, the ordinance was amended to remove the list of "criminal organizations," although the ordinance continued to assert that it was an offense to aid and abet an abortion by engaging in conduct such

–3–

as "[k]nowingly providing transportation to or from an abortion provider" or "[p]roviding money with the knowledge that it will be used to pay for an abortion or the costs associated with procuring an abortion."

## The Statements at Issue

Following enactment of the Waskom Ordinance, and during the following months, Dickson made a number of statements on television and on Facebook related to the ordinance he drafted and supported. Along with the ordinance language quoted above, which declared TAC and TEAF to be criminal organizations, appellees referenced five such statements in their petitions—four Facebook posts on Dickson's and RLET's pages and one statement to CNN—and submitted additional Facebook posts during the Motion to Dismiss proceeding.

By way of example, Dickson posted the following statement on Facebook on June 11, 2019:

> Congratulations Waskom, Texas for becoming the first city in Texas to become a "Sanctuary City for the Unborn" by resolution and the first city in the Nation to become a "Sanctuary City for the Unborn" by ordinance. Although I did have my disagreements with the final version, the fact remains that abortion is now OUTLAWED in Waskom, Texas! … All organizations that perform abortions and assist others in obtaining abortions (including Planned Parenthood and any of its affiliates, Jane's Due Process, The Afiya Center, The Lilith Fund for Reproductive Equality, NARAL Pro-Choice Texas, National Latina Institute for Reproductive Health, Whole Woman's Heath and Woman's Health Alliance, Texas Equal Access Fund, and others like them) are now declared to be criminal organizations in Waskom, Texas. This is history in the making and a great victory for life!

He posted the following on November 26, 2019:

> This is an ordinance that says murdering unborn children is outlawed, so it makes sense to name examples of organizations that are involved in murdering unborn children. That is what we are talking about here: The murder of unborn children.

And RLET posted this Dickson-authored statement on its Facebook page:

> [A]bortion is freedom in the same way that a wife killing her husband is freedom. Abortion is murder. . . . Abortion is illegal in Waskom, Texas.

Appellees sued Dickson and RLET, asserting that the statements defamed them by calling them criminal organizations and murderers.

**The Motion to Dismiss**

Appellants timely filed their Motion to Dismiss in response to appellees defamation claim. In that motion, appellants invoked application of the Texas Citizens' Participation Act (the TCPA) on the bases of their right of free speech, right to petition, and right of association.[1] They charged that TAC and TEAF could not establish by clear and specific evidence (a) that appellants had made a false statement of fact, or (b) that appellants had acted with malice or negligence in making the statements at issue, or (c) that appellees had suffered damages as a result of the statements at issue. However, appellants argued further that—even if TAC and TEAF could establish those elements of their claims by clear and specific evidence—the trial court should still dismiss the claims because the statements were true or substantially true or were constitutionally protected opinion or rhetorical

---

[1] The appellees' original petitions, later consolidated by agreement, were both filed on June 11, 2020. Accordingly, this case is governed by the amended version of the TCPA that became effective September 1, 2019. Act of May 17, 2019, 86th Leg., R.S., ch. 378, § 11, 2019 Tex. Sess. Law Serv. 684, 687.

hyperbole, and appellants were thus entitled to judgment as a matter of law. Appellants sought recovery of their costs and attorney's fees. In support of their Motion to Dismiss, appellants submitted copies of what they identify as the Texas abortion statutes; a copy of the amended Waskom Ordinance; and the Affidavit of Mark Lee Dickson.

TAC and TEAF filed their Joint Opposition to Defendants' Second Amended Motion to Dismiss Under The Texas Citizens Participation Act, attaching the following evidence: a copy of the original version of the Waskom Ordinance; copies of each of the published statements relied on in the petitions; the Affidavit of Marsha Jones, co-founder and Executive Director of TAC; the Affidavit of Kamyon Conner, Executive Director of TEAF; and the Declaration of Jennifer Rudenick Ecklund, attorney for TAC and TEAF.

Appellants filed a Reply Brief, which attached a supplemental affidavit from Dickson.[2] The trial court heard the Motion to Dismiss and denied it "on all grounds." This interlocutory appeal followed.

### THE TCPA

The purpose of the TCPA is "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate

---

[2] The reply also attached affidavits from appellants' counsel, Jonathan Mitchell, and a law professor, Michael Stokes Paulsen. Those affidavits were stricken by the trial court in their entirety, and appellants have not complained of their exclusion in this Court.

in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE ANN. § 27.002. The act itself instructs us to construe its provisions liberally "to effectuate its purpose and intent fully." *Id.* § 27.011(b). Litigants invoke the protection of the TCPA through a motion to dismiss, *id.* § 27.003, and we review a trial court's ruling on such a motion de novo, *Vaughn-Riley v. Patterson*, No. 05-20-00236-CV, 2020 WL 7053651, at *2 (Tex. App.—Dallas Dec. 2, 2020, no pet.) (mem. op.).

The TCPA provides a three-step process for determining whether a case should be dismissed. *See generally Youngkin v. Hines*, 546 S.W.3d 675, 679–80 (Tex. 2018). At the outset, the movant must demonstrate that the TCPA applies to the legal action brought against it. CIV. PRAC. & REM. § 27.005(b). If the movant meets that burden, then the party bringing the legal action must establish by clear and specific evidence a prima facie case for each essential element of the claim in question. *Id.* § 27.005(c). If the party bringing the action satisfies that requirement, the action will still be dismissed if the movant "establishes an affirmative defense or other grounds on which the moving party is entitled to judgment as a matter of law." *Id.* § 27.005(d).[3]

---

[3] Prior to the 2019 amendments to the TCPA, the third step provided for dismissal "if the moving party establishes by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claim."

**Step 1: Applicability of the Act**

The TCPA applies to a legal action that is based on or is in response to the movant's exercise of the right of free speech, the right to petition, or the right of association. *Id.* § 27.005(b)(1). In both the trial court and this Court, the parties agree that TAC's and TEAF's claims for defamation and conspiracy to defame fall within the TCPA's concept of free speech. Accordingly, we need not address this first step further. *See Dallas Morning News, Inc. v. Hall*, 579 S.W.3d 370, 377 (Tex. 2019); *Caracio v. Doe*, No. 05-19-00150-CV, 2020 WL 38827, at *5 (Tex. App.—Dallas Jan. 3, 2020, no pet.) (mem. op.).

**Step 2: Clear and Specific Evidence of a Prima Facie Case**
**For the Essential Elements of the Legal Action**

Appellants contend that TAC and TEAF have failed to come forward with clear and specific evidence of a prima facie case for the essential elements of their claims for defamation and conspiracy to defame. In this second step, the statute directs us to consider "the pleadings, evidence a court could consider under Rule 166a, Texas Rules of Civil Procedure, and supporting and opposing affidavits stating the facts on which the liability or defense is based." CIV. PRAC. & REM. § 27.006. We consider the pleadings and evidence in the light most favorable to the nonmovant. *Dyer v. Medoc Health Servs., LLC*, 573 S.W.3d 418, 424 (Tex. App.—Dallas 2019, pet. denied); *see also Locke Lord LLP v. Retractable Techs., Inc.*, No. 05-20-00884-CV, 2021 WL 1540652, at *2 (Tex. App.—Dallas Apr. 20, 2021, no

pet. h.) (mem. op.). As the supreme court has stated, in a TCPA proceeding "we assume [the] truth" of the nonmovant's evidence. *Rosenthal*, 529 S.W.3d at 440 n.9.

*Appellees' Defamation Claim*

The elements of the tort of defamation include "(1) the publication of a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) with the requisite degree of fault, and (4) damages, in some cases." *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015) (orig. proceeding) (citing *WFAA–TV, Inc. v. McLemore,* 978 S.W.2d 568, 571 (Tex.1998)). In this Court, appellants have challenged appellees' proof on the elements of a false statement of fact and the requisite degree of fault.[4]

Generally, clear and specific evidence means that the plaintiff 'must provide enough detail to show the factual basis for its claim.'" *D Magazine Partners, L.P. v. Rosenthal*, 529 S.W.3d 429, 434 (Tex. 2017) (quoting *Lipsky*, 460 S.W.3d at 591). The "clear and specific evidence" standard does not impose a heightened evidentiary burden or reject the use of circumstantial evidence when determining the nonmovant's prima-facie-case burden. *Andrews County v. Sierra Club*, 463 S.W.3d 867 (Tex. 2015). In a defamation case implicating the TCPA, "pleadings and

---

[4] Appellants do not challenge appellees' evidence as to whether the statements at issue were defamatory, i.e., whether they tended "to injure [appellees'] reputation, to expose [them] to public hatred, contempt, ridicule, or financial injury, or to impeach [their] integrity, honesty, or virtue." *Backes v. Misko*, 486 S.W.3d 7, 24 (Tex. App.—Dallas 2015, pet. denied). Accusing someone of a crime is defamatory per se under Texas common law. *Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 638 (Tex. 2018). Such an accusation is "so obviously harmful that general damages, such as mental anguish and loss of reputation, are presumed." *Id.* (citing *Lipsky*, 460 S.W.3d at 596). Thus, appellants do not challenge evidence of the element of damages either.

evidence that establishes the facts of when, where, and what was said, the defamatory nature of the statements, and how they damaged the plaintiff should be sufficient to resist a TCPA motion to dismiss." *Lipsky*, 460 S.W.3d at 591. We do not scrutinize individual statements; instead, we examine the larger context of the purportedly defamatory conduct by the movant. *See, e.g.*, *Bentley v. Bunton*, 94 S.W.3d 561, 581 (Tex. 2002) (considering series of statements during "Bunton's efforts over many months to prove Bentley corrupt").

(1)    Evidence that Appellants' Statements Were Statements of Fact

Again, TAC and TEAF limit their defamation claim to assertions that they are criminal organizations and that their conduct in assisting a woman terminating her pregnancy literally amounts to murder.[5] To determine whether such assertions were statements of fact, we focus on the statements' verifiability and the context in which they were made. *Id.* at 583. An actionable statement must assert an objectively verifiable fact, not merely an opinion. *Campbell v. Clark*, 471 S.W.3d 615, 625 (Tex. App.—Dallas 2015, no pet.). However, "[m]erely expressing a defamatory statement in the form of an 'opinion' does not shield it from tort liability because opinions often imply facts." *Backes v. Misko*, 486 S.W.3d 7, 24 (Tex. App.—Dallas 2015, pet. denied); *see also, e.g.*, *Bentley*, 94 S.W.3d at 583 ("If a speaker says, 'In my

---

[5]    In their letter to appellants seeking retraction, appellees stressed: "We are not asking you to change your political views or cease advocating for them. All we ask is that you . . . retract[] any allegations that these organizations or their agents have broken or are breaking any laws." Throughout this lawsuit, appellees have similarly limited their action to charges that they have committed crimes; they specifically except from any complaint appellants' opinions concerning abortion.

opinion John Jones is a liar,' he implies a knowledge of facts which lead to the conclusion that Jones told an untruth."). Even if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact. *Bentley*, 94 S.W.3d at 583. Determining whether a statement is actionable fact or non-actionable opinion is a question of law. *Scripps NP Operating, LLC v. Carter*, 573 S.W.3d 781, 795 (Tex. 2019).

We ask, then, whether the statements at issue—that TAC and TEAF are criminal organizations and that they commit murder—are verifiable. Can we determine as a matter of fact whether the conduct with which a party has been charged is criminal or is murder? Stated differently, can we verify the status of the law as to a particular offense at the time of a particular statement? We conclude that we can, because our state's criminal law is gathered and written in the Texas Penal Code. And while it is true that a municipal ordinance may also identify conduct that constitutes an offense, *see* TEX. PENAL CODE ANN. § 1.03(a), the Texas Constitution provides that no such ordinance "shall contain any provision inconsistent with the Constitution of the State, or of the general laws enacted by the Legislature of this State." TEX. CONST. art. XI, § 5; *City of Richardson v. Responsible Dog Owners of Tex.*, 794 S.W.2d 17, 19 (Tex. 1990).

Appellees' evidence included the statements alleged to be defamatory and identified when they were made and how they were published; appellants do not

dispute those fundamental facts. We conclude that the gist of these statements, i.e., that appellees are criminal organizations and that their conduct amounts to murder, can be verified by reference to the Texas Penal Code. Indeed, among the objectives of that code are "by definition and grading of offenses to give fair warning of what is prohibited and of the consequences of violation," and "to safeguard conduct that is without guilt from condemnation as criminal." PENAL § 1.02(2), (4).

We also look to the context in which the statements were made. Dickson purports to pronounce the salutary effect of the Waskom Ordinance on the status of the criminal law involving abortion in Texas; he describes it as "history in the making." He expresses confidence that "[i]n the coming weeks more cities in Texas will be taking the same steps that the City of Waskom took to outlaw abortion in their cities and become sanctuary cities for the unborn." As he describes the effect of this first ordinance, and the effect he anticipates passage of similar ordinances throughout the state will have, he is purporting to inform the public of a change in the criminal law. Dickson claims to have made significant efforts to determine the status of the law, and—based on those efforts—he made statements declaring appellees to be criminal organizations and murderers. We conclude he made those declarations, and continues to make them, as statements of fact. *See generally Bentley*, 94 S.W.3d at 585 ("The clear import of Bunton's statements on 'Q&A' was that Bentley was corrupt as a matter of verifiable fact, as Bunton continued to assert at trial.").

(2) <u>Evidence that Appellants' Statements Were False</u>.

Appellees' burden on this element was to produce clear and specific evidence that appellants' statements calling TAC and TEAF criminals and asserting that they are committing murder when they provide assistance to a woman seeking to terminate a pregnancy are false. The issue of falsity is generally a question of fact. *Bentley*, 94 S.W.3d at 587 (if evidence is disputed, falsity must be determined by finder of fact). In this case, however—where the gist of the defamation issue turns on the status of the criminal law concerning abortion—much of our analysis must be guided by that law.

We construe a series of allegedly defamatory statements as a whole, in light of the surrounding circumstances, and based upon how a person of ordinary intelligence would perceive them. *See Lipsky*, 460 S.W.3d at 594 ("While some of the statements may, in isolation, not be actionable, . . . the gist of his statements were that Range was responsible for contaminating his well water and the Railroad Commission was unduly influenced to rule otherwise."). We have concluded that a statement concerning the status of the criminal law is verifiable by reference to the penal code, whether directly or indirectly by comparing a local ordinance to that code. Accordingly, to adjudge appellees' evidence of falsity, we look first to the penal code to discern whether the conduct alleged by appellants could reasonably be declared criminal.

The penal code does not define the term "criminal" or its root word, "crime." As a general principle of statutory construction, when a term is not defined by statute it bears its common, ordinary meaning, which we typically determine by looking to dictionary definitions. *Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 838 (Tex. 2018). Merriam-Webster defines a "crime" as "an illegal act for which someone can be punished by the government." *Crime*, MERRIAM-WEBSTER.COM DICTIONARY, www.merriam-webster.com/dictionary/crime (last visited July __, 2021). Appellees' evidence includes a copy of the original Waskom Ordinance, which ordinance provides:

> Neither the City of Waskom, nor any of its officers or employees, nor any district or county attorney, nor any executive or administrative officer or employee of any state or local governmental entity, shall take any steps to enforce this ordinance against a person or entity that commits an unlawful act described in Section C, unless and until the Supreme Court overrules *Roe v. Wade*, 410 U.S. 113 (1973), and *Planned Parenthood v. Casey*, 505 U.S. 833 (1992), and permits states and municipalities to once again enforce abortion prohibitions.

Thus, although the ordinance purports to outlaw abortion and any conduct that assists in the procurement of an abortion, it states on its face that no arm of the government can take any steps to enforce those prohibitions "unless and until" the Supreme Court's opinions securing a right to abortion are overruled. Thus, the ordinance itself serves as evidence that assisting women in terminating a pregnancy is not "an illegal act for which someone can be punished by the government," i.e., that such assistance is not a crime.

–14–

The statements at issue, submitted by appellees as evidence below, repeatedly declare that abortion is murder. The ordinance asserts: "Abortion at all times and at all stages of pregnancy is declared to be an act of murder with malice aforethought." Appellees argue that the definition of murder in the Texas Penal Code establishes that this is false. The code states that a person commits the offense of murder "if he: (1) intentionally or knowingly causes the death of an individual." PENAL § 19.02(b)(1). And the code defines the term "individual" to mean "a human being who is alive, including an unborn child at every stage of gestation from fertilization until birth." *Id.* § 1.07(a)(26). However, appellees correctly point out that the code makes a specific exception to the chapter on criminal homicide, stating:

> This chapter does not apply to the death of an unborn child if the conduct charged is:
>
> (1) conduct committed by the mother of the unborn child; [or]
>
> (2) a lawful medical procedure performed by a physician or other licensed health care provider with the requisite consent, if the death of the unborn child was the intended result of the procedure.

*Id.* § 19.06. Thus, the Texas Legislature has created a specific exception to the definition of murder for an abortion performed lawfully.

Section 19.06 became the law in Texas after our statutes outlawing abortion were declared unconstitutional by the United States Supreme Court in *Roe v. Wade*, 410 U.S. 113 (1973). Shortly after *Roe* was decided, the Texas Attorney General was asked to explain the status of Texas law concerning abortion and, after addressing *Roe* and its effect, he stated: "Therefore, there presently are no effective

statutes of the State of Texas against abortion, per se." Tex. Att'y Gen. Op. No. H-369, 3 (1974). When appellants made their statements decades later, *Roe v. Wade* and its progeny continued to be binding law in Texas. *See, e.g.*, *Ex parte Twedell*, 158 Tex. 214, 228 (1958) (Texas Supreme Court is "duty bound to follow the Supreme Court of the United States" when construing U.S. Constitution); *see also Ex parte Evans*, 537 S.W.3d 109, 111 (Tex. Crim. App. 2017) ("The ultimate authority on federal constitutional law is the U.S. Supreme Court.").[6]

If further clarification of the status of Texas criminal law regarding abortion were necessary, it was recently supplied by the Presiding Judge of the Texas Court of Criminal Appeals, who stated in unambiguous terms: "A mother choosing to abort her unborn child is not a crime under Texas law." *State v. Hunter*, No. PD-0861-20, 2021 WL 2449991, at *1 (Tex. Crim. App. June 16, 2021) (concurring in denial of review). The defendant in *Hunter* was charged, *inter alia*, with solicitation to commit capital murder based on text messages sent to his girlfriend requesting that she obtain

---

[6] The Waskom Ordinance recites:

*Roe v. Wade*, 410 U.S. 113 (1973), is a lawless and illegitimate act of judicial usurpation, which violates the Tenth Amendment by trampling the reserved powers of the States, and denies the people of each State a Republican Form of Government by imposing abortion policy through judicial decree[.]

Appellants cite no legal authority for the proposition that a city may, by adopting an ordinance, declare a United States Supreme Court opinion "lawless and illegitimate" and thereby ignore its pronouncements.

–16–

an abortion. *State v. Hunter*, 606 S.W.3d 836, 837 (Tex. App.—Austin 2020, pet. refused). The trial court granted a defense motion to quash and dismiss the solicitation count of the indictment, and the court of appeals affirmed that order. *Id.* Presiding Judge Keller explained her reason for denying the State's petition for review, writing:

> My reason to refuse review is simple: The State's indictment does not charge a crime under the laws of the State of Texas, the Court of Appeals's resolution was correct, and the correct resolution *is so obvious* that we need not grant review. A mother choosing to abort her unborn child is not a crime under Texas law, so the defendant cannot be guilty of the offense of solicitation for soliciting such a crime.

*Hunter*, 2021 WL 2449991, at *1 (emphasis added). And as to the specific question of the charge of murder, she stated, "[T]he entire homicide chapter of the Penal Code, including the provision proscribing the offense of murder, 'does not apply' to the mother ending the unborn child's life." *Id.*

The Motion to Dismiss contends that the Waskom Ordinance negates section 19.06 of the penal code by declaring abortion to be unlawful within that city. However, neither the Waskom Ordinance, nor any other edict by local government, may conflict with this legislative exception. TEX. CONST. art. XI, § 5. And regardless of appellants' stated belief that *Roe* was incorrectly decided, our attorney general in 1974, and our highest criminal court today, have acknowledged that abortion is not a crime under Texas law.

Our task in this opinion, however, is not to rule on the viability of the Waskom Ordinance. In this preliminary proceeding under the TCPA we must limit our ruling

–17–

to whether the parties carried their respective burdens under that statute. We conclude that appellees have offered clear and specific evidence—and a cogent legal argument—making a prima facie case that they have not committed a crime generally, or murder specifically, while engaging in any conduct condemned by appellants. Accordingly appellees have carried their step-two burden as to the element of falsity.

We overrule appellants' first issue.

(3) <u>Evidence that Appellants Acted With the Requisite Mental State</u>

In their second issue, appellants argue that TAC and TEAF failed to produce clear and specific evidence sufficient to provide a prima facie case that appellants made the statements at issue with actual malice. If the person allegedly defamed is a private individual, he must establish the defamatory statements were made negligently; a public figure or official must prove actual malice. *Lipsky*, 460 S.W.3d at 593. "'Actual malice' in this context means that the statement was made with knowledge of its falsity or with reckless disregard for its truth." *Id.*

Appellants contend that appellees are "limited-purpose public figures," and thus, that appellees must establish appellants made their statements with actual malice as opposed to negligence. We apply a three-part test to determine whether a party qualifies as a limited-purpose public figure:

> (1) the controversy at issue must be public both in the sense that people are discussing it and people other than the immediate participants in the controversy are likely to feel the impact of its resolution;

–18–

(2) the plaintiff must have more than a trivial or tangential role in the controversy; and

(3) the alleged defamation must be germane to the plaintiff's participation in the controversy.

*Neely v. Wilson*, 418 S.W.3d 52, 70 (Tex. 2013). Whether a party is a limited-purpose public figure is a question of law for the court. *Id.* The "controversy at issue" in this case concerns the Waskom Ordinance and its ability to outlaw abortion within the city of Waskom. While we cannot adjudge how large a group of people are "discussing it," appellees' evidence includes Facebook posts, which are followed by many comments from the public. Moreover, appellees' evidence indicates that they have been contacted by a number of people who have heard about—and been confused by—the ordinance and appellants' statements concerning its effect. We also agree with appellants that people other than these parties are likely to feel the impact of its resolution, given that the Waskom Ordinance applies to all the city's residents and that Dickson's efforts have motivated a number of other cities to adopt similar ordinances. Thus the evidence satisfies the first factor of the *Neely* test.

However, the second and third factors of the test address the role of TAC and TEAF in this controversy. The evidence establishes that TAC and TEAF are solely targets of the ordinance, otherwise playing no role in creating the subject controversy. The Supreme Court has explained that "those charged with defamation cannot, by their own conduct, create their own defense by making the claimant a public figure." *Hutchinson v. Proxmire,* 443 U.S. 111, 135 (1979). "[T]he

–19–

allegedly defamatory statement cannot be what brought the plaintiff into the public sphere." *Neely*, 418 S.W.3d at 71. In this case, it was precisely the allegedly defamatory statements—beginning with the ordinance's declaration that TAC and TEAF were criminal organizations—that brought appellees into any public controversy involving the Waskom Ordinance. As the Connor and Jones affidavits state:

> It was not until Defendants began shopping around a draft ordinance in the summer of 2019 that [appellees] even realized that the Defendants and others were alleging [their] mission and operations were in violation of criminal law. Until that time, neither [appellees] nor [their] agents made any public statements or engaged in any debate about the question of whether [appellees were] currently violating any criminal law.

We conclude that these appellees were drawn involuntarily into the controversy spawned by the Waskom Ordinance and that they are not limited purpose public figures. *See Neely*, 418 S.W.3d at 71 ("[N]either the United States Supreme Court nor this Court has found circumstances in which a person involuntarily became a limited-purpose public figure.").

Accordingly, to meet their step-two burden on the element of appellants' mental state, appellees need only have offered clear and specific evidence of a prima facie case that appellants made the statements at issue negligently. To carry that burden, TAC and TEAF had to show that appellants knew or should have known that their statements calling appellees criminal organizations and murderers were

false. *See id.* at 72. They could make this showing of appellants' state of mind through circumstantial evidence. *Bentley*, 94 S.W.3d at 591.

Dickson's affidavits assert his belief that abortion remains a crime in Texas. He asserts that he consulted a lawyer, carefully researched "case law and legal scholarship," and concluded that (a) the Waskom Ordinance successfully rendered abortion unlawful, and thus a criminal offense in that city, and (b) because the Texas Legislature never repealed the abortion statutes declared unconstitutional by the Supreme Court in *Roe*, "the law of Texas continues to define abortion as a criminal offense."[7]

We begin the inquiry—as we did the inquiry into falsity—with the Waskom Ordinance itself. And we look again to the ordinance's directive that the government may not enforce its provisions "unless and until the Supreme Court overrules *Roe v. Wade*, 410 U.S. 113 (1973), and *Planned Parenthood v. Casey*, 505 U.S. 833 (1992), and permits states and municipalities to once again enforce abortion prohibitions." Just as this provision of the ordinance directly evidences the fact that abortion is not currently a crime, it provides circumstantial evidence that Dickson knew when he

---

[7] TAC and TEAF have argued that the Texas Legislature impliedly repealed the abortion statutes by regulating the process of abortion in Texas. In supplemental briefing, appellants point out that the legislature recently included the following statement in a statute that will become effective September 1, 2021:

> The legislature finds that the State of Texas never repealed, either expressly or by implication, the state statutes enacted before the ruling in *Roe v. Wade*, 410 U.S. 113 (1973), that prohibit and criminalize abortion unless the mother's life is in danger.

Senate Bill 8 § 2. In this opinion, we do not rely upon, and express no opinion concerning, the question of repeal by implication.

drafted the ordinance that abortion was not currently a crime. Likewise, Dickson's statement to CNN about the Waskom Ordinance implies that he knew that abortion was not currently a crime. He told CNN that "[t]he idea is this: in a city that has outlawed abortion, in those cities if an abortion happens, then later on when *Roe v. Wade* is overturned, those penalties can come crashing down on their heads." The statement may be ambiguous about what happens now, but it is clear that Dickson understood the penalties would only "come crashing down" *after* the status of the law changes. We conclude that the ordinance Dickson drafted, and his statements about it, evidence—at a minimum—a serious question in his mind as to whether abortion was currently a crime in Texas.

After *Roe* declared Texas's abortion statutes unconstitutional, the Texas Legislature transferred those laws to articles 4512.1 through 4512.6 of the Revised Civil Statutes. Appellants' second legal theory posits that unconstitutional but unrepealed criminal statutes continue to identify criminal conduct in Texas. This theory relies heavily upon a law review article, *The Writ-of-Erasure Fallacy*, 104 VA. L. REV. 933 (2018), authored by Jonathan Mitchell, who is serving as one of appellants' attorneys of record in this Court. Dickson's affidavit states that, although the article does not address the status of Texas's unconstitutional abortion statutes, it explains that "the Supreme Court lacks any power to formally revoke or 'strike down' statutes that it declares unconstitutional, and that those statutes continue to exist as laws until they are repealed by the legislature that enacted them." Dickson

states that this article "further confirmed [his] belief that abortion remains a 'criminal' offense under Texas law, despite the Court's ruling in *Roe v. Wade*."

Appellants' Texas legal authority for this conclusion is limited to a single footnote in a Texas Supreme Court case on an unrelated issue. In *Pidgeon v. Turner*, 538 S.W.3d 73, 75 (Tex. 2017), taxpayers sought an injunction to prohibit the city of Houston from providing employee benefits to same-sex spouses of city employees who had been legally married in other states. The trial court granted the injunction, but while the case was pending on appeal, the United States Supreme Court decided *Obergefell v. Hodges*, and held that states may not exclude same-sex couples from civil marriage on the same terms and conditions as opposite-sex couples. 576 U.S. 644, 675–76 (2015). The *Pidgeon* court of appeals reversed the temporary injunction. 538 S.W.3d at 76. The Texas Supreme Court vacated the injunction and remanded the case to the trial court. It concluded that *Obergefell* did not require states to provide the same publicly funded benefits to all married persons, and the parties should have the opportunity to develop that issue, and others, at trial. *Id.* at 86–87. In the course of that discussion, the court dropped this footnote:

> We note that neither the Supreme Court in *Obergefell* nor the Fifth Circuit in *De Leon* "struck down" any Texas law. When a court declares a law unconstitutional, the law remains in place unless and until the body that enacted it repeals it, even though the government may no longer constitutionally enforce it. Thus, the Texas and Houston DOMAs remain in place as they were before *Obergefell* and *De Leon*, which is why Pidgeon is able to bring this claim.

*Id.* at 88 n.21.

Our colleagues on the El Paso court of appeals have rejected reliance on the *Pidgeon* footnote in another context. In *Zimmerman v. City of Austin*, 620 S.W.3d 473, 476 (Tex. App.—El Paso 2021, pet. filed), Zimmerman challenged the city's allocation of $150,000 for "abortion access logistical support services." He alleged that the City's proposed expenditures were *ultra vires* because they violate the state's abortion laws, which made it a crime to assist a woman in procuring an abortion. *Id.* at 477. He argued that—because the Texas Legislature never repealed the statutes— "they remained in effect for any application outside of that addressed in *Roe v. Wade.*" *Id.* at 477–78. He contended that the City's proposed expenditures "would in effect assist women in obtaining an abortion in conflict with these unrepealed statutes." *Id.* at 478.

The El Paso court identified four "problems" with relying on the *Pidgeon* footnote. We summarize them briefly:

(1)  The opinion in *Pidgeon* focused on two facts—*Obergefell* did not directly address the constitutionality of any laws in Texas, and the trial court had not yet had the opportunity to examine the scope and extent of *Obergefell*'s holding as it applied to the Texas laws at issue. *Roe*, in contrast, was fully litigated up to the United States Supreme Court, which specifically declared the Texas abortion statutes unconstitutional.

(2)  The rationale expressed by the *Pidgeon* footnote, i.e., that an unconstitutional statute "remains in place unless and until the body that enacted it repeals it," does not necessarily mean the Texas abortion statutes still have any enforceable effect. Even if the court does no more than declare that the courts will not enforce an unconstitutional law, no court would have a basis to enforce the Texas abortion statutes.

(3)  The *Pidgeon* footnote has not been validated by subsequent opinions from the Texas Supreme Court. Instead, the Court has more recently treated statutes that have been declared unconstitutional as null and void and has stated that an offense created by an unconstitutional statute "is not a crime." *See, e.g.*, *Ex parte E.H.*, 602 S.W.3d 486, 494 (Tex. 2020) (recognizing that an "unconstitutional law is void, and is no law," and that an offense created by an unconstitutional statute "is not a crime").

(4)  The Court of Criminal Appeals recognized over a century ago, when a legislative act is declared to be unconstitutional, the act is "absolutely null and void," and has "no binding authority, no validity [and] no existence." *See Ex parte Bockhorn*, 62 Tex. Crim. 651, 138 S.W. 706, 707 (Tex. Crim. App. 1911) (pronouncing that an unconstitutional law should be viewed as "lifeless," as "if it had never been enacted," given that it was "fatally smitten by the Constitution at its birth).

*Id*. at 484–85. The court concluded that the unconstitutional abortion statutes could not serve as a basis for Zimmerman to challenge the City's budget allocation. *Id.* at 486.

Likewise, we conclude that the *Pidgeon* footnote cannot defeat appellee's evidence and legal argument showing that appellants knew or should have known that appellees were not criminals or murderers under Texas law. To the extent that later cases have not implicitly overruled the footnote, we conclude that it represents no more than an interesting metaphysical theory of where and how unrepealed and unconstitutional statutes exist. The footnote does not support a legal argument that unrepealed and unconstitutional statutes can be enforced in any fashion. To the extent those statutes continue to exist, it is not as part of the criminal law of the State of Texas. A violation of such a statute is not a crime.

We conclude that anyone making a serious investigation into the status of Texas criminal law would learn that the overwhelming body of that law confirms that a mother's termination of a pregnancy is not a crime and is certainly not murder.[8] Thus, we conclude that TAC and TEAF have carried their TCPA step-two burden to make a prima facie case that appellants knew or should have known that their statements declaring appellees criminal organizations and accusing them of murder were false. We overrule appellants' second issue.

*Appellees' Conspiracy Claim*

Appellees also pleaded a claim against both appellants alleging that they conspired to defame appellees. In their fourth issue, appellants contend that appellees failed to produce clear and specific evidence of a conspiracy between them.

A civil conspiracy involves a combination of two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996) (orig. proceeding). "[A] defendant's liability for conspiracy depends on participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable." *Id.*

---

[8] While discussing the higher standard of actual malice, our supreme court stated: "A failure to investigate fully is not evidence of actual malice; a purposeful avoidance of the truth is." *Bentley*, 94 S.W.3d at 596. A failure to investigate fully is evidence of negligence.

Thus, appellees' conspiracy claim depends on appellants' participation in the alleged defamation.

In a TCPA appeal, we do not analyze a trial court's refusal to dismiss a plaintiff's cause of action for conspiracy separately from its refusal to dismiss the plaintiff's underlying cause of action. *See Minett v. Snowden*, No. 05-18-00003-CV, 2018 WL 2929339, at *11 (Tex. App.—Dallas June 12, 2018, pet. denied) (mem. op.). Therefore, because we have determined that the trial court properly refused to dismiss appellants' defamation claim, we conclude that it did not err by refusing to dismiss the conspiracy to defame claim as well. *See id.*

We overrule appellant's fourth issue.

*Derivative Liability of RLET*

In their fifth issue, appellants argue that appellees have failed to produce clear and specific evidence establishing that RLET should be legally responsible for statements published only by Dickson. Appellants acknowledge that two of the statements identified by appellees' petition that were authored by Dickson were posted by RLET on its Facebook page. They contend that all other statements at issue were published only by Dickson.

Appellees, however, have pleaded that RLET is liable directly—not derivatively through respondeat superior—for Dickson's statements. Regardless, to the extent that such derivative liability is or becomes an issue in this case, it is not an issue for the TCPA. A motion to dismiss under the TCPA must be directed at a

"legal action." CIV. PRAC. & REM. § 27.003. That term is defined to mean "a lawsuit, cause of action, petition, complaint, cross-claim, or counterclaim or any other judicial pleading or filing that requests legal, declaratory, or equitable relief." *Id.* § 27.001(6). The common law doctrine of respondeat superior is not the equivalent of these requests for relief: it is instead a recognition that "liability for one person's fault may be imputed to another who is himself entirely without fault solely because of the relationship between them." *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 540 (Tex. 2002). Because it is not a separate legal action, we do not address it separately from the underlying cause of action for defamation in a TCPA motion to dismiss. *Jones v. Pozner*, No. 03-18-00603-CV, 2019 WL 5700903, at *1 n.2 (Tex. App.—Austin Nov. 5, 2019, pet. denied) (mem. op.).

We overrule appellants' fifth issue.

### Step 3: Proof of Defense as a Matter of Law

In their third issue, appellants contend that—even if appellees have produced clear and specific evidence of the essential elements of their defamation claim—appellants are entitled to judgment based on their defensive theories. Appellants' burden in the proceeding below was to establish such a defense or ground as a matter of law. CIV. PRAC. & REM. § 27.005(d). We consider all the evidence in determining whether appellants established a defensive ground. *D Magazine Partners, L.P. v. Rosenthal*, 475 S.W.3d 470, 480–81, 488 (Tex. App.—Dallas 2015), aff'd in part, rev'd in part, 529 S.W.3d 429 (Tex. 2017).

*Truth or Substantial Truth*

Both common law and statute provide that truth and substantial truth are defenses to defamation. *Neely*, 418 S.W.3d at 62 (citing CIV. PRAC. & REM. § 73.005, *Turner v. KTRK Television, Inc.,* 38 S.W.3d 103, 115 (Tex. 2000)). Appellants contend that all statements for which they have been sued are true or, at the very least, substantially true.

Appellants' evidence of this defense is Dickson's affidavit testimony. There he states that he believes the Texas abortion statutes continue to impose criminal liability on anyone who "furnishes the means for procuring an abortion knowing the purpose intended," citing article 4512.2. He also testifies that he believes an ordinance that outlaws abortion within its city limits successfully eliminates the legal status of abortion in that city. And as to the pronouncements of the United States Supreme Court, Dickson states:

> I understand that the Court's decision in *Roe v. Wade* means that the federal judiciary is unlikely to sustain criminal convictions obtained under the Texas abortion statutes for as long as the Court adheres to the notion that abortion is a constitutional right. I also understand that *Roe* makes it unlikely that any prosecutor in Texas will attempt to bring criminal charges against abortion providers for their violations of state law because the courts are unlikely to uphold those convictions until *Roe* is overruled. But none of that changes the fact that the law of Texas continues to define abortion as a criminal offense. I believed (and continue to believe) that it is truthful to call abortion a "crime" under state law even if abortion providers are not currently being prosecuted for their criminal acts. I believed (and continue to believe) that a person or organization that breaks a criminal statute is a "criminal"—regardless of whether they are ultimately prosecuted and punished for their unlawful conduct.

Finally, Dickson asserts that he did not act negligently (or with reckless disregard, as actual malice requires) in making the statements at issue because he "carefully researched the law and consulted with legal counsel" before publishing them.

A TCPA movant cannot carry his step-three burden with self-serving and conclusory affidavits. *Camp v. Patterson*, No. 03-16-00733-CV, 2017 WL 3378904, at *10 (Tex. App.—Austin Aug. 3, 2017, no pet.) (mem. op.). "Imagining that something may be true is not the same as belief." *Bentley*, 94 S.W.3d at 596.

To reach the legal conclusions he does, Dickson ignores or rejects out of hand: the clear language of penal code section 19.06 excepting abortion from the definition of murder; article XI, section 5 of the Texas Constitution, which prohibits a local government provision from conflicting with the penal code; opinions of the Texas Attorney General, the Texas Supreme Court, and the Texas Court of Criminal Appeals, which acknowledge that once declared unconstitutional, a statute has no legal effect; and the pronouncements of the United States Supreme Court that declare a constitutional right of a woman to terminate a pregnancy. He relies instead upon a law review article and a strained interpretation of a single footnote that subsequent cases may have implicitly overruled. *See In re Lester*, 602 S.W.3d 469, 483 (Tex. 2020) (J. Blacklock dissenting) ("[T]he Court overrules *sub silentio* its prior, correct statement—just three years ago—regarding judicial declarations of the unconstitutionality of statutes . . . After today, that statement from *Pidgeon* hangs

from a thread (though it remains correct). Under today's decision, statutes declared unconstitutional by courts no longer exist.").

The gist of appellants' statements is that TAC and TEAF are criminal organizations whose conduct amounts to murder. We concluded above that appellees' evidence and legal argument have made a prima facie case that those statements are not true. We have considered appellants' evidence and legal argument in rebuttal to appellees' proof. We conclude that appellants have failed to establish they are entitled to judgment as a matter of law on the defense of truth or substantial truth.

*Constitutionally Protected Opinion*

Appellants' argument here is straightforward: Dickson argues he has the right to believe that the Supreme Court was wrong in *Roe v. Wade* when it concluded there was a right to abortion in the Constitution. We agree that Dickson has a right to his opinion. But he has not been sued on the basis of that opinion; he has been sued for publishing statements that call TAC and TEAF criminal organizations that commit murder. If those statements are proven at trial to be defamatory, his personal opinions about *Roe v. Wade* will not provide him, or RLET, a defense. Simply put, while Dickson has the right to his opinions, he does not have the right to defame someone who disagrees with those opinions. TAC and TEAF have raised fact issues in support of their defamation claim. Appellants have not established that they are entitled to judgment as a matter of law on the basis of any constitutionally protected opinion.

*Rhetorical Hyperbole*

Finally, appellants argue that they are entitled to judgment as a matter of law because their statements were merely rhetorical hyperbole. We have called the concept of rhetorical hyperbole "extravagant exaggeration [that is] employed for rhetorical effect." *Backes,* 486 S.W.3d at 26. Such a statement is not actionable as defamation. *Id.* But to qualify as rhetorical hyperbole so as to be protected from a defamation claim, a statement must be understood by the ordinary reader as an overstatement, a rhetorical flourish, that is not intended to be taken literally. *See, e.g.*, *Greenbelt Co-op. Pub. Ass'n v. Bresler*, 398 U.S. 6, 14 (1970) ("even the most careless reader" would recognize that calling a proposal "blackmail" was rhetorical hyperbole used by those who considered the negotiating position extremely unreasonable; the record contained no evidence that anyone thought proposal maker had been charged with a crime); *Marble Ridge Capital LP v. Neiman Marcus Group, Inc.*, 611 S.W.3d 113, 125 (Tex. App.—Dallas 2020, pet. dism'd) (statement concerning "theft of assets" did not qualify as rhetorical hyperbole because reasonable persons would understand the phrase to mean that "entities with a rightful claim to the assets were being harmed by the designations and transactions about which [the party] complained").

Appellants contend that their statements accusing TAC and TEAF of aiding and abetting murder or criminal acts qualify as protected rhetorical hyperbole "so long as the context makes clear that the accusations refer only to plaintiffs'

involvement in abortion and nothing more." They support this contention with citations to two sources in which the speakers did not mean either (a) their allegations that abortion is murder literally or (b) that an activist who identified on his website a doctor who performed abortions was legally responsible for the doctor's murder. *See Horsley v. Rivera*, 292 F.3d 695, 702 (11th Cir. 2002) (when doctor who performed abortions was murdered, television host's calling anti-abortionist an "accomplice to murder" was rhetorical hyperbole; no reasonable viewer would conclude host was literally contending that activist could be charged with murder); *see also* 1 Rodney A. Smolla, *Law of Defamation* § 4:13 (2d ed. 2005) (protesters at abortion clinic with signs declaring doctor a murderer "obviously" do not intend charge to be taken literally). These sources do not stand for the proposition that one can use defamatory language and be protected so long as the language refers to abortion in some manner. Instead, they instruct that—to avoid liability for defamation on the basis of rhetorical hyperbole—the speaker must show that a reasonable person would not understand that he meant the statement literally.

In this case, RLET published Dickson's assertion on Facebook: "We said what we meant and we meant what we said. Abortion is illegal in Waskom, Texas." And in a June 14 Facebook post, Dickson posed the key question and then answered it himself:

Is abortion literally murder?

Yes. The fact that 'abortion is literally murder' is why so many people want to outlaw abortion within the city limits of their cities. If you want

to see your city pass an enforceable ordinance outlawing abortion be sure to sign the online petition.

We conclude that a reasonable person reading appellants' statements calling TAC and TEAF criminals and murderers could believe that appellants intended the statements literally. When we consider all the evidence before the trial court, we conclude appellants failed to establish as a matter of law that the statements at issue were merely rhetorical hyperbole.

Appellants have failed to carry their third-step burden to prove they are entitled to judgment as a matter of law on any of their defensive theories. We overrule their third issue.

## CONCLUSION

We affirm the trial court's order.

/Bill Pedersen, III//

200988f.p05

BILL PEDERSEN, III
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

MARK LEE DICKSON AND
RIGHT TO LIFE EAST TEXAS,
Appellants

No. 05-20-00988-CV          V.

THE AFIYA CENTER AND
TEXAS EQUAL ACCESS FUND,
Appellees

On Appeal from the 116th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-20-08104.
Opinion delivered by Justice
Pedersen, III. Justices Osborne and
Nowell participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee The Afiya Center and Texas Equal Access Fund recover their costs of this appeal from appellant Mark Lee Dickson and Right to Life East Texas.

Judgment entered this 8th day of September, 2021.